**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES KARKOSZKA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 C 1635 |
| v. ) | |
| ) | |
| THOMAS J. DART, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On October 13, 2014, Plaintiff James Karkoszka filed a three-count First Amended Complaint against Defendants Cook County Sheriff Thomas J. Dart, in his official capacity, Cook County, Illinois, and individual Cook County Sheriff's Officers Ramon Navarro, Christopher Young, William Franko, Don Beachem, Anthony Jones, Noah Robinson, Gary Dukes, Gregory Webb, John Malloy, and Thomas Leinweber. In Count I of the First Amended Complaint, Plaintiff alleges an excessive force claim, along with the attendant failure to intervene claim, against the individual Defendants Officers. *See* 28 U.S.C. § 1331, 42 U.S.C. § 1983. In Count II, Plaintiff alleges a claim against Defendant Dart pursuant to *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In Count III, Plaintiff sets forth a state law battery claim against the individual Defendants pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Plaintiff has since withdrawn his *Monell* claim against Defendant Dart as alleged in Count II and the Court dismisses Defendant Dart as a named Defendant in this lawsuit.

Before the Court are the individual Defendants' motions for summary judgment as to

Counts I and III brought pursuant to Federal Rule of Civil Procedure 56(a) and Northern District of Illinois Local Rule 56.1.[1] For the following reasons, the Court denies Defendants' summary judgment motions.

## BACKGROUND

Harwood Heights, Illinois police officers arrested Plaintiff on October 8, 2012. (R. 93, Defs.' Rule 56.1 Stmt. Facts ¶ 1; R. 111, Young Rule 56.1 Stmt. Facts ¶ 1.) After his arrest, Plaintiff was transferred to the Cook County Department of Corrections ("CCDOC"). (Defs.' Stmt. Facts ¶ 4; Young Stmt. Facts ¶ 3.) On October 10, 2012, Sheriff's Officers took Plaintiff to his scheduled court date at the Cook County Courthouse in Rolling Meadows, Illinois. (Defs.' Stmt. Facts ¶ 5; Young Stmt. Facts ¶ 4; R. 105, Pl.'s Stmt. Add'l Facts ¶ 1.) Upon his return from the Rolling Meadows Courthouse, one of the Sheriff's Officers thought Plaintiff did not look well and sent him to Cermak Health Services within the CCDOC and then to Stroger Hospital for medical care. (Defs.' Stmt. Facts ¶ 5; Young Stmt. Facts ¶ 4; Pl.'s Stmt. Facts ¶ 1.) Plaintiff spent about ten hours at Stroger Hospital where he was given blood thinner due to his history of blood clots. (Young Stmt. Facts. ¶ 5; Pl.'s Stmt. Facts ¶ 1.)

After his return from Stroger Hospital – on the evening of October 11, 2012 and the morning hours of October 12, 2012 – Plaintiff was in a Division V bullpen waiting for transfer to the medical and acute psych division within the CCDOC, namely, Division X. (Defs.' Stmt. Facts ¶ 6; Young Stmt. Facts ¶ 6.) Defendant Officer Ramon Navarro was the movement officer for Division X at that time. (Defs.' Stmt. Facts ¶ 7; Young Stmt. Facts ¶ 7.) To effectuate

---

[1] Individual Defendant Lieutenant Christopher Young brings a separate motion for summary judgment.

Plaintiff's transfer, Officer Navarro first went to the deck at the Reception Classification Diagnosis Center ("RCDC") to retrieve Plaintiff's medical packet. (Young Stmt. Facts ¶ 8.) Officer Navarro then went to the Division V bullpen to transfer Plaintiff to Division X. (*Id*. ¶¶ 8, 9; Defs.' Stmt. Facts ¶ 8; Pl.'s Stmt. Facts ¶ 7.) When Officer Navarro went to the bullpen to transfer Plaintiff, Plaintiff stood up, after which Navarro told Plaintiff that they were going to Division X. (Young Stmt. Facts ¶ 8.) Plaintiff then sat back down on the bench. (*Id*.) Thereafter, Defendant Commander William Franko and Officer Navarro entered the bullpen. (Defs.' Stmt. Facts ¶ 9; Young Stmt. Facts ¶ 10.) Officer Franko, the Administrative Duty Officer that day, explained the transfer process to Plaintiff and told him that they needed to take him to his assigned division. (Defs.' Stmt. Facts ¶ 10; Young Stmt. Facts ¶ 11.)

Officer Navarro then approached Plaintiff to handcuff him, but Plaintiff resisted. (Defs.' Stmt. Facts ¶¶ 14, 15, 22; Pl.'s Stmt. Facts ¶ 6.) An altercation ensued, at which time Officer Navarro took Plaintiff to the ground. (Defs.' Stmt. Facts ¶ 15.) Officer Navarro testified that he was unable to completely control Plaintiff. (*Id*. ¶ 23.) Defendant Sergeant Don Beachem testified that he was also in the bullpen at that time and could not get a grip on Plaintiff during this altercation. (*Id*. ¶ 16.) Defendant Officers Anthony Jones and Noah Robinson then relocated to the bullpen to assist Officer Navarro in handcuffing Plaintiff. (*Id*. ¶¶ 18, 20, 21, 24; Young Stmt. Facts ¶ 16.) Officers Navarro and Jones testified at their depositions that they were unable to handcuff Plaintiff because he was "flailing" around. (Def.'s Stmt. Facts ¶¶ 19, 20.) After efforts to handcuff Plaintiff had failed, Officer Franko called Defendant Lieutenant Young, the shift commander, and instructed him to report to the scene and bring pepper spray and a video camera with him. (Defs' Stmt. Facts ¶ 26; Young Stmt. Facts ¶ 17.) Prior to arriving at

the bullpen, Officer Young, who had the pepper spray and video camera, handed the video camera to Defendant Officer Gary Dukes, after which they went to the bullpen in Division V. (Defs.' Stmt. Facts ¶ 27; Young Stmt. Facts ¶ 18.)² Officer Navarro then called officers from Cermak Health Services to assist in transporting Plaintiff to Division X, including Defendant Officers Gregory Webb, John Malloy, and Thomas Leinweber. (Defs.' Stmt. Facts ¶¶ 39, 40; Young Stmt. Facts ¶ 25.) At that time, Officers Webb, Malloy, and Leinweber successfully handcuffed Plaintiff while he was on the ground. (Young Stmt. Facts ¶ 27.) The parties dispute whether Officer Young sprayed pepper spray in the bullpen before handcuffing Plaintiff or sprayed the pepper spray after the officers had already handcuffed Plaintiff. (*Id.* ¶ 37; Pl.'s Stmt. Facts ¶ 22.) In any event, once handcuffed, Plaintiff was able to walk on his own and was escorted out of the bullpen. (Pl.'s Stmt. Facts ¶¶ 14, 16.)

At some point thereafter, CCDOC staff took Plaintiff to Cermak Health Services. (*Id.* ¶ 27; Young Stmt. Facts ¶ 30.) The medical records from the emergency room at Cermak dated October 12, 2012 reflect that Plaintiff had been in an altercation, was "beaten badly to the head," and sustained blunt head trauma resulting in intra-cranial hemorrhaging. (Pl.'s Stmt. Facts ¶ 27.) Paramedics then took Plaintiff to Stroger Hospital where Plaintiff spent four to five days for treatment. (Young Stmt. Facts ¶ 32; Pl.'s Stmt. Facts ¶ 38.) Along with his head injuries, Plaintiff maintains that he has carpal tunnel syndrome and permanent nerve damage because Defendant Officers dragged him around by the handcuffs. (Pl.'s Stmt. Facts ¶ 29; Young's Stmt. Facts ¶ 33; Defs.' Stmt. Facts ¶ 59.) There is also evidence in the record that at some point while

---

² Despite the fact that Officer Dukes had a video camera outside the bullpen during this altercation, no video tape of the incident exists. (Pl.'s Stmt. Facts ¶ 34.)

at the CCDOC on October 12, 2012 Plaintiff lost consciousness. (Pl.'s Stmt. Facts ¶ 24.) Upon his return from Stroger Hospital and after Plaintiff's father bonded him out of the CCDOC, his father took Plaintiff to Advocate Lutheran General Hospital for additional medical care. (*Id.* ¶ 25.) After his release from Advocate Lutheran General Hospital, Plaintiff's father took photographs of his son's injuries, which showed abrasions and bruises, among other injuries. (*Id.* ¶ 29.)

At his deposition, Plaintiff testified that he told the officers that he was not going to let them handcuff him and that he kept his hands open in such a way so that the officers could not put handcuffs on him. (Def.'s Stmt. Facts ¶ 22.) Plaintiff also testified that although he did not attempt to strike the officers, he purposely struggled to avoid being handcuffed. (*Id.* ¶ 48; Pl.'s Stmt. Facts ¶ 6.) Moreover, Plaintiff testified that the officers physically attacked him in their attempts to handcuff him and after he was subdued. (Pl.'s Stmt. Facts ¶¶ 8, 10, 11, 12.) Further, Plaintiff testified that after he was handcuffed, Defendant Officers Beachem, Young, Malloy, Leinweber, Webb, and Dukes escorted him to a room where they handcuffed him to a wall, sprayed him with pepper spray, and continued to hit and kick him. (*Id.* ¶¶ 17, 19.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Life Plans, Inc. v. Security Life of Denver Ins. Co.,* 800 F.3d 343, 349 (7th Cir. 2015). In determining summary judgment

motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Life Plans, Inc.*, 800 F.3d at 349. A court's "job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014).

## ANALYSIS

**I.  Excessive Force Claim/Failure to Intervene – Count I**

In Count I of his First Amended Complaint, Plaintiff brings an excessive force claim against Defendants Officers Navarro, Young, Franko, Beachem, Jones, Robinson, Dukes, Webb, Malloy, and Leinweber. The Fourth Amendment's objective reasonableness standard governs cases involving pre-trial detainees' allegations of excessive force. *See Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2472-73, 192 L.Ed.2d 416 (2015); *Kingsley v. Hendrickson*, 801 F.3d 828, 830 (7th Cir. 2015) (per curiam) (The Supreme Court in *Kingsley* held "'that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively

6

unreasonable' and that no showing regarding the defendant's state of mind is required."). As the Supreme Court teaches, "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Kingsley,* 135 S.Ct. at 2473 (quoting *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* In addition, "[a] court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish,* 441 U.S. 520, 540, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). The *Kingsley* Court further instructs, "[c]onsiderations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

Examining the facts and all reasonable inferences in Plaintiff's favor, the Court would be hard-pressed to conclude that – as a matter of law – Defendant Officers' conduct was objectively reasonable due to the extent and severity of Plaintiff's injuries in relation to security issues or institutional necessity. To clarify, although Plaintiff was actively resisting being handcuffed, he was a detainee in a Division V bullpen – as opposed to being in the public or at large – where at least ten Sheriff's Officers were present, many of whom attempted to handcuff him, while others

7

allegedly hit and kicked him. In the process of handcuffing Plaintiff, removing him from the bullpen, and detaining him in another holding area, Plaintiff suffered a blunt head trauma resulting in intra-cranial bleeding, along with bumps, bruises, and nerve damage. There is also evidence in the record that at some point on October 12, 2012, Plaintiff lost consciousness. In short, Plaintiff has presented evidence creating genuine factual disputes for trial that the force Defendant Officers used was not proportionally appropriate to the threat Plaintiff posed – despite Defendants' argument that Plaintiff created and perpetuated the situation requiring them to use force. *See Phillips v. Cmty. Ins. Corp.,* 678 F.3d 513, 527 (7th Cir. 2012); *Cyrus v. Town of Mukwonago,* 624 F.3d 856, 863 (7th Cir. 2010).

Nevertheless, Defendant Officers argue that Plaintiff cannot establish that they were personally involved in the alleged constitutional deprivation. *See Matz v. Klotka,* 769 F.3d 517, 528 (7th Cir. 2014) ("A damages suit under § 1983 requires that a defendant be personally involved in the alleged constitutional deprivation."); *Matthews v. City of E. St. Louis,* 675 F.3d 703, 708 (7th Cir. 2012) (for a supervisor to be personally responsible, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye."). Defendants specifically argue that because Plaintiff has failed to sufficiently identify "what each Defendant did to him during the October 12, 2012, incident" he has failed to establish the necessary personal involvement to hold the Defendant Officers liable. Defendants' argument misunderstands Plaintiff's burden at this juncture. In particular, the Seventh Circuit teaches that a plaintiff's inability to identify which of the named defendants attacked him does not preclude liability on an excessive force claim as long as the plaintiff "can show at trial that an officer attacked him while []other officer[s] ignored a realistic opportunity to intervene." *Miller v. Smith,* 220 F.3d

491, 495 (7th Cir. 2000). Put differently, an "officer may be held to account both for his own use of excessive force on the plaintiff, as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers." *Sanchez v. City of Chicago,* 700 F.3d 919, 926 (7th Cir. 2012) (internal citation omitted). Here, there are triable issues of fact that each named Defendant Officer was involved in Plaintiff's handcuffing and alleged beating or was present and observed the other Defendant Officers' kicking and hitting Plaintiff, yet failed to take reasonable steps to stop the use of excessive force.[3] *See id*; *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014).

Although Plaintiff has established a genuine issue of fact for trial that Defendants violated his Fourth Amendment rights under the circumstances, Defendants argue that qualified immunity protects them from liability. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes,* ___ U.S. ___, 135 S.Ct. 2042, 2044, 192 L.Ed.2d 78 (2015) (internal quotation marks omitted). "A right is clearly established if it is sufficiently clear that any reasonable official would understand that his or her actions violate that right, meaning that existing precedent must have placed the statutory or constitutional question beyond debate." *Zimmerman v. Doran,* 807 F.3d 178, 182 (7th Cir. 2015). "A plaintiff can show that a right is 'clearly established' by statute or constitution in at

---

[3] Defendant Young's argument that Plaintiff's failure to intervene claim is untenable because it is based on his self-serving testimony is misplaced because deposition testimony – by its nature – is self-serving. *See Hill v. Tangherlini,* 724 F.3d 965, 967 (7th Cir. 2013) ("As we have repeatedly emphasized over the past decade, the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.").

least two ways: (1) he can point to a clearly analogous case establishing the right to be free from the conduct at issue; or (2) he can show that the conduct was 'so egregious that no reasonable person could have believed that it would not violate established rights.'" *Beaman v. Freesmeyer,* 776 F.3d 500, 508 (7th Cir. 2015) (citation omitted).

After the Supreme Court's remand in *Kingsley*, the Seventh Circuit rejected the defendant jail officials' qualified immunity argument in the context of the jail guards using Tasers on a non-resisting detainee, who was handcuffed and lying prone. *See Kingsley,* 801 F.3d at 832-33. In this context, the Seventh Circuit concluded that before and after the Supreme Court's *Kingsley* decision, it was clearly established that "the amount of force had to be reasonable in light of the legitimate objectives of the institution." *Id.* at 833. Here, viewing the facts and reasonable inferences in Plaintiff's favor, although Plaintiff initially resisted being handcuffed, evidence in the record reveals that Officer Navarro took him to the ground after which Officers Webb, Malloy, and Leinweber successfully handcuffed him. It is reasonable to infer based on the extent and severity of Plaintiff's injuries and the fact that Officer Navarro got Plaintiff to the ground at the beginning of the altercation that certain Defendant Officers continued to hit, beat, or kick Plaintiff when he was on the ground of the bullpen and after he was handcuffed and subdued. There is also evidence in the record creating a triable issue that Officer Young used pepper spray after Plaintiff had already been handcuffed. Moreover, it was clearly established at the time of the incident on October 12, 2012 that a reasonable officer would be on notice that this use of force was unnecessary and excessive due to the lack of a legitimate security interest once Plaintiff was handcuffed and on the ground. *See id.* at 832; *see also Miller,* 761 F.3d at 829 ("prohibition against significant force against a subdued suspect applies notwithstanding a

suspect's previous behavior"); *see, e.g., Sallenger v. Oakes,* 473 F.3d 731, 741 42 (7th Cir. 2007). In addition, a reasonable officer observing this excessive and unreasonable force would know that the other officers were violating Plaintiff's rights so that intervention was warranted. *See Abdullahi v. City of Madison,* 423 F.3d 763, 775 (7th Cir. 2005). Accordingly, Defendant Officers' qualified immunity argument fails.

Because Plaintiff has presented evidence raising genuine factual disputes for trial that Defendant Officers' use of force was constitutionally unreasonable under the circumstances of this case, the Court denies Defendants' summary judgment motions as to Count I of the First Amended Complaint.

## II.     State Law Tort Claim – Count III

In Count III of his First Amended Complaint, Plaintiff brings a common law battery claim against all of the individual Defendants. "Under Illinois law, battery is the 'unauthorized touching' of another that 'offends a reasonable sense of personal dignity.'" *Chelios v. Heavener,* 520 F.3d 678, 692 (7th Cir. 2008) (citation omitted); *see also Fiala v. Bickford Senior Living Grp., LLC,* 2015 IL App (2d) 150067, ¶ 20, ___ N.E.3d ___, 2015 WL 7348226, at *4 (2d. Dist. Nov. 19, 2015). In their summary judgment motions, the individual Defendants argue that Plaintiff's battery claim is barred by the Illinois Local Government and Governmental Employees Tort Immunity Act ("Tort Immunity Act.") *See* 745 ILCS 10/1-101, *et seq*.

More specifically, Section 2-202 of the Tort Immunity Act states that a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." *See* 745 ILCS 10/2-202. The Tort Immunity Act defines willful and wanton conduct as:

11

> [A] course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. This definition shall apply in any case where a "willful and wanton" exception is incorporated into any immunity under this Act.

745 ILCS 10/1–210. "Although willful and wanton conduct 'consists of more than mere inadvertence, incompetence, or unskillfulness,' it need not be an 'intentional act; rather, it may be an act committed under circumstances exhibiting a reckless disregard for the safety of others." *Chelios*, 520 F.3d at 693 (citation omitted). Whether an officer acted with reckless disregard for the safety of others is normally a factual question for the jury. *See id.*; *see also Robles v. City of Chicago*, 2014 IL App (1st) 131599, 381 Ill.Dec. 151, 10 N.E.3d 236, 240 (1st Dist. 2014) ("Whether a person is guilty of wilful and wanton conduct is a question of fact for the jury and should rarely be ruled upon as a matter of law.").

In general, when an officer's use of force rises to the level of being unconstitutionally excessive, it will also constitute willful and wanton conduct for purposes of Illinois' Tort Immunity Act. *See Lopez v. Dart,* No. 06 C 4836, 2008 WL 4889088, at *5 (N.D. Ill. July 17, 2008) (collecting cases). Construing the facts and all reasonable inferences in Plaintiff's favor, Defendant Officers used excessive force before and after handcuffing him, which raises a genuine issue of fact whether Defendant Officers' conduct amounted to an utter indifference or conscious disregard of Plaintiff's safety or other detainees' safety. Further evidence of Defendants' reckless disregard is the severity of Plaintiff's extensive injuries, including a blunt head trauma resulting in intra-cranial hemorrhaging. The Court therefore denies Defendants' motions as to Plaintiff's battery claim alleged in Count III.

## CONCLUSION

For these reasons, the Court denies Defendant Officers' motions for summary judgment [84, 92].

**Dated:** January 14, 2016

                                                **ENTERED**

                                                *[signature]*

                                                **AMY J. ST. EVE**
                                                **United States District Court Judge**